157 So.2d 824 (1963)
FLORIDA BOARD OF PHARMACY, APPELLANT,
v.
JOHN M. HALL, APPELLEE.
No. 3772.
District Court of Appeal of Florida, Second District.
October 30, 1963.
Rehearing Denied December 4, 1963.
*825 Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., Tallahassee, and Leonard R. Mellon, Asst. Atty. Gen., Miami, for appellant.
Doyle E. Carlton, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellee.
SHANNON, Judge.
The Florida Board of Pharmacy, appellant herein, filed against John M. Hall, appellee, a complaint and notice to show cause why his license to practice pharmacy should not be revoked, because he, on four separate occasions, had permitted a person not licensed as a pharmacist in this State to fill, compound and dispense certain prescriptions while the said person was not acting under the direction and immediate supervision of a licensed pharmacist, all in violation of Sec. 465.18(2), Fla. Stat., F.S.A. The appellee filed an answer to said complaint and notice to show cause. A hearing was held by the Board, and as a result, an order was entered suspending the appellee's license for ninety days, after which he was to be placed on probation for a period of one year. This order was appealed to the Circuit Court for Hillsborough County, which court affirmed the holding of the Board. However, on rehearing, the Circuit Court reversed and set aside the order, saying in part:
"This matter came on to be heard upon Petition for Rehearing calling to this Court's attention the Third District Court of Appeals' opinion and decision in the case of Dupuy v. State of Florida, 141 So.2d 825 which had not been published at the time the original argument in this cause was heard. Final determination of this matter has been withheld pending disposition of certiorari to the Supreme Court of the State of Florida in the said Dupuy case. The Court is advised that such petition has now been denied leaving that opinion in full force and effect and binding upon this Court. Being without power to question the wisdom of that decision, this Court is of the opinion that the effect of that decision is to require the reversal of its former order on appeal entered herein June 25, 1962 and to quash the order entered by the Florida State Board of Pharmacy on December 1, 1961 suspending the license of the respondent, John M. Hall. * * *"
The instant appeal by the Florida Board of Pharmacy from the above order on rehearing brings up the single question of whether or not the conduct of the narcotics inspectors in this case was such as to constitute entrapment under the laws of the State of Florida. The appellee has also set out a point on appeal to the effect that the evidence does not establish that the appellee violated Sec. 465.18(2), Fla. Stat. F.S.A. But, in view of the fact that the appellee did not cross-assign error within ten days after the appellant had filed its assignments, this court may not consider the same. As the Florida Supreme Court stated in Regero v. Daugherty, Fla. 1953, 69 So.2d 178:
"* * * [I]nasmuch as the defendant has not questioned this adjudication by appropriate cross-assignment of error the correctness of this finding is not open to inquiry as between the parties to this appeal. * * *"
The appellee owns The Tampa Prescription Shop, and had in his employ a Mrs. Geneva Hobson, who is not a registered pharmacist, but who assisted him at times behind the counter. At various times near the end of 1960 certain inspectors for the State Bureau of Narcotics, using aliases, *826 went to certain doctors and received prescriptions for alleged ailments. They then took these prescriptions to the appellee's shop when the appellee was not present, at which time Mrs. Hobson "filled" them. The prescriptions were for narcotic tablets, all of which were already prepared, therefore necessitating only the counting and placing of such tablets in small containers. After the fourth time, the inspectors arrested Mrs. Hobson and the appellee. On each occasion that the prescriptions were filled or refilled the appellee was absent from the drugstore.
We must therefore find whether or not the appellee was entrapped in view of the decision of the Third District in the case of Dupuy v. State, Fla.App. 1962, 141 So.2d 825, which decision the lower court found controlling. In the Dupuy case the defendant was tried before the Criminal Court of Record and convicted of practicing dentistry without having obtained a license; his case was appealed to the Third District. The defendant in that case was a licensed dental technician. His laboratory, like others in the area, was visited by a paid investigator for the Board of Dental Examiners. This was a routine investigation, and was not prompted by any evidence, complaint or suspicion that the defendant was practicing dentistry without a license. At the investigator's request, the defendant made a partial plate for him. A week or two later, the investigator returned with a Mrs. Shadron, another paid investigator, and, after some negotiations, defendant relined her dental plate. The lower court found defendant not guilty in the case involving the original investigator, but found him guilty in the case involving Mrs. Shadron. The appellate court held that the facts in that case constituted entrapment, and reversed the lower court. The court relied upon Langford v. State, 1933, 111 Fla. 506, 149 So. 570; Lashley v. State, Fla. 1953, 67 So.2d 648; and Peters v. Brown, Fla. 1951, 55 So.2d 334.
Basically, the issue presented is refined to whether the appellee had the idea of committing the offense originally, or whether the idea of committing the offense originated in the minds of the inspectors. In other words, as we interpret the test as set out in the Dupuy case, the question is whether the appellee was induced by the investigators to violate the law, or whether he was merely presented with an opportunity to do so. The evidence in this case shows that the investigators entered the appellee's drugstore and handed to a person not a registered pharmacist a prescription which called for donnatal tablets. One such prescription was filled by this clerk on November 30, 1960, at which time she placed the tablets in a small plastic vial, typed up the label, and gave it to the investigator. On December 15, 1960, the same investigator returned to the same store and had the bottle refilled from the same prescription. Again, on December 28, 1960, the investigator went to the store and asked the clerk to refill that prescription, whereupon the clerk counted out the tablets, placed them in a vial, and gave them to him. At none of the foregoing times was the appellee or any other registered pharmacist present in the drugstore. The testimony showed that on December 28, 1960, the investigator entered the drugstore at 9:10 A.M., and that it was not until 9:55 A.M. that the appellee arrived at the store. In addition to the above, on February 15, 1961, another inspector for the State Bureau of Narcotics entered the drugstore and presented to the same clerk a prescription calling for forty tablets of pro-banthine with phenobarbital. At this time the clerk filled the prescription and handed the tablets to the investigator. Again, neither the appellee nor any other registered pharmacist was present in the store.
The record also shows that the appellee's drugstore was being investigated because of complaints that Mrs. Hobson was filling prescriptions.
In the Dupuy case the court said:
"* * * When government inducement is employed to entrap someone *827 not engaged in such a course of activity, it has not detected crime but has merely helped to create it. Hence the rule is that the defense of entrapment is available to those who are instigated, induced or lured by an officer of the law or other person to commit a crime which they had otherwise no intention of committing and, conversely, not available to those with the requisite criminal intent who are merely furnished with the opportunity to commit crime by an officer of the law or other person acting in good faith with the purpose of detecting and preventing crime. * * *"
In view of the fact that the Dupuy case was apparently decided on the authority of three prior Florida cases, it would be advisable for us to examine these in light of this case, as well as the Dupuy case.
In Langford v. State, supra, decided by our Supreme Court in 1933, the facts were set out as follows:
"It is contended here that because a prohibition agent, in company with a native undercover man well known to the defendant, went to the home of the defendant and there offered to buy whisky from the defendant, the undercover man assuring the defendant that the prohibition agent was his (the undercover man's) brother-in-law and that he was `all right' and that nothing would be said about the sale, and thereby gained the confidence of the defendant, causing thereby the defendant to sell the two a pint of whisky, that this was an entrapment which would bar the prosecution for the offense committed."
In ruling against entrapment the court said, in part, as follows:
"The most recent enunciation of the law of entrapment is that contained in the opinion by Mr. Chief Justice Hughes of the Supreme Court of the United States, Sorrells v. U.S., 287 U.S. 435, 53 S.Ct. 210, 212, 77 L.Ed. 413. In that opinion the writer said: `It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. (Citing cases). The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'"
Peters v. Brown, supra, which was a 4 to 3 decision by our Supreme Court, was a case in which the State Board of Dental Examiners brought action against one L.M. Peters, to enjoin him from practicing dentistry without a license. The Circuit Court granted a permanent injunction, but on appeal the injunction was dissolved and the cause dismissed. Mr. Justice Terrell, for the court, said, in part:
"I do not know anything about the line that separates the function of the dentist from that of the dental technician and there is not a shred of evidence here to show where it lies, neither is there any other evidence to support the charge against appellant. In other words, all the evidence against him is purchased evidence, bearing on the controverted fact of whether he was acting as a dentist or a dental technician. I do not think this court should sanction such apostasy from *828 approved procedure. It is contrary to law and public policy for an officer or member of an administrative board to induce the commission of a wrong or a crime for the purpose of securing a pretext to punish it. In Newman v. United States, 4 Cir., 299 F. 128, 131 it was held that decoys may be used to entrap criminals or present opportunity to one to commit crime, but they are not permissible to ensnare the innocent and law abiding into the commission of a crime."
In Lashley v. State, supra, decided by our Supreme Court in 1953, the court stated:
"`Where the evidence shows an intention on the part of the accused to commit the crime charged, evidence obtained by entrapment is admissible, and this is true even though the witnesses acted as decoys.' Wharton's Criminal Evidence, Vol. I, 11th Ed., sec. 378. As the general rule is stated in 22 C.J.S., Criminal Law, sec. 45: `One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of "entrapment." Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.' (Emphasis supplied.)"
The three cases that we have discussed all appear to have a common thread running through them to the effect that if it was the defendant's intention to act as he did, then entrapment is not a defense; but if it was the officers' or witnesses' intention to place the idea in the mind of the defendant, and by their artifices produce the result which they desired, then it is the sort of entrapment that our Supreme Court in Peters v. Brown, supra, has designated as "apostasy from approved procedure."
Since the Dupuy decision, our Supreme Court has had before it the case of Carter v. State, Fla. 1963, 155 So.2d 787, in which it affirmed the conviction of the appellant for the offense of attempted abortion. Mr. Justice Drew, for the court, stated:
"* * * The trial court, in our opinion, properly left to the jury, upon all the evidence and under instructions which are not questioned on this appeal, the question of whether defendant was merely presented with the opportunity of committing a crime or whether the criminal design or intent originated in the minds of the officers who by persuasion induced its commission by the accused."
After due consideration of the case law and treatises on this subject, this court on the basis of the facts brought out in the record, must hold that the appellee, John M. Hall, was cognizant of the fact that he and his saleslady were violating the law, and that the investigators herein simply presented the opportunity for further violations. And, as stated by Mr. Chief Justice Hughes in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413:
"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. * * *"
For the reasons stated, the judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.
Reversed and remanded.
ALLEN, Acting C.J., and WHITE, J., concur.