164 So.2d 867 (1964)
Coy MITCHELL, d/b/a Coy Mitchell Dental Laboratory, Appellant,
v.
Rupert H. GILLESPIE et al., as and constituting the Florida State Board of Dental Examiners, Appellees.
No. E-312.
District Court of Appeal of Florida. First District.
May 28, 1964.
Rehearing Denied June 25, 1964.
*869 W. Dexter Douglass, Tallahassee, for appellant.
Robinson & Randle, Jacksonville, for appellees.
WIGGINTON, Judge.
Defendant has appealed a final decree which found him guilty of practicing dentistry in the State of Florida without first having obtained a license so to do, and permanently enjoining him from thereafter practicing dentistry as defined by the laws of this state.
This action was instituted by the State Board of Dental Examiners by a complaint which charges appellant Coy Mitchell with practicing dentistry in Marianna without first having obtained a proper certificate or license, contrary to the laws of Florida. The complaint alleges that the defendant did furnish, supply, construct and reproduce prosthetic dentures to be worn in the human mouth, and did supply artificial substitutes for the natural tooth, without the written prescription of a duly licensed or registered dentist. By his answer defendant alleges that he owns and operates a licensed dental laboratory in Marianna; admits that he is not licensed to practice dentistry; and denies that he has or is practicing dentistry as defined by the laws of this state. Upon the issues made by the pleadings testimony was taken before the chancellor, who personally heard the witnesses and had the opportunity of judging their credibility and determining the weight to which their testimony was entitled. It was only after a full trial on the merits that the decree appealed was rendered.
The evidence, when considered in a light most favorable to the prevailing party, establishes the following facts. Over a period of several years duly licensed and practicing dentists who were members of the Northwest District Dental Society of Florida received numerous complaints from patients and others that appellant Coy Mitchell was unlawfully engaged in activities which constitute the practice of dentistry under the laws of this state. As a result of this information, a number of dentists, as well as some laymen, filed complaints with the State Board of Dental Examiners, protesting the alleged illegal activity of appellant Mitchell. Many of these complaints were in the form of sworn affidavits, while others were in the form of unsworn letters. The complaints became so persistent that the Northwest Dental Society adopted a resolution calling attention of the State Board of Dental Examiners to the continued flagrant violation of the State Dental Practice Act by appellant Mitchell. Because of the character and volume of the complaints received by it from its members, the illegal practice committee of the Florida State Dental Society employed the services of three investigators who made a trip to Marianna for the purpose of investigating the alleged illegal activity of appellant in the practice of dentistry. The substance of the testimony given by two of these investigators is that they called on appellant at his dental laboratory and one of them requested appellant to make for him an upper denture plate. Although appellant acknowledged that to do so would be illegal and might result in trouble both for appellant and the investigator, he nevertheless agreed to comply with the investigator's request. Appellant matched the artificial teeth he proposed to furnish with the artificial lower denture worn by the investigator, and made an impression of the investigator's gums. A wax model was also made of the investigator's mouth so that the upper denture could be made therefrom. After the upper denture was completed by appellant, the investigator paid the sum of $40.00 cash, and agreed to mail his check for the balance of $20.48, constituting the full amount charged by appellant for his services.
*870 The Dental Practice Act provides, inter alia, that any person shall be deemed to be practicing dentistry who performs dental service of any kind or who directly or indirectly makes an impression of the human tooth, teeth, or jaws; or supplies artificial substitutes for the natural teeth, or who furnishes, supplies, constructs, reproduces, or repairs any prosthetic denture to be worn in the human mouth.[1] The statute exempts from its operation any person who engages in the business of filling work orders of a licensed and registered dentist for the construction, reproduction, or repair of prosthetic dentures, bridges, plates, or appliances to be used or worn as substitutes for natural teeth.[2] It is clear from the foregoing provisions of the statute that the operator of a dental laboratory may construct dentures or artificial teeth pursuant to a prescription or work order issued by a duly licensed dentist. It is equally clear, however, that to perform such a service except pursuant to a prescription or work order of a duly licensed dentist constitutes the practice of dentistry in which one may engage only after having procured the license or certificate pursuant to the provisions of the applicable statute governing the dental profession.
The chancellor rendered his final decree in which he made specific findings of fact and rulings of law. Although the evidence adduced by the investigators was in conflict with that given by appellant Mitchell, the chancellor found that no form of enticement was used by the investigators as an inducement to appellant to perform the act in question; that neither an emergency nor act of compassion justified appellant in making the denture as testified to by the investigators, which act constitutes the practice of dentistry under the laws of this state. The court further found that the complaints registered by licensed dentists and laymen regarding the alleged unlawful activities of appellant constituted a legitimate basis for the investigation conducted and financed by the unlawful practice committee of the Florida State Dental Society. The court found that the action of the investigators merely provided an opportunity for appellant to illegally infringe upon the field of dentistry, and that neither the elements of entrapment, nor its counterpart in equity, the doctrine of clean hands, are present in this case. It was upon such findings and conclusions that the chancellor found appellant guilty of illegally practicing dentistry as defined by the laws of Florida, and permanently enjoined him from further engaging in such illegal activities in the future.
Appellant contends that the decision in this case is controlled by the decision rendered by the Supreme Court in Peters v. Brown.[3] The facts in the Peters case are somewhat similar to those in the case sub judice, but are distinguishable in certain material respects. In Peters the operator of a dental laboratory was charged by a bill in equity with illegally engaging in the practice of dentistry as defined by the statutes of this state, and an injunction was sought to restrain him from continuing such illegal activity. The Supreme Court held that the case had its genesis in a "suspicion" that appellant was doing acts that amounted to the practice of dentistry, and it was only because of such suspicion that two witnesses were employed by the State Dental Society to call at appellant's laboratory and offer him the opportunity to perform some dental work for them. According to the published opinion, the evidence revealed that the appellant ran a model of the dentures for one of the witnesses, and put wax in her mouth and made an impression for the other witness. Nothing else took place, and both witnesses were paid a fee of $100.00 for the interview they had with appellant and the testimony they gave at the trial. The Supreme Court confessed that it knew nothing about the line that *871 separates the function of a dentist from that of a dental technician, and the record revealed no evidence to show where that line lies, nor was there any other evidence to support the charge made against appellant. The Supreme Court found that all the evidence in the case against appellant was adduced for pay and if given full face value, it leaves one in doubt whether defendant was doing the work of dentist or a dental technician. On the basis of the foregoing findings and conclusions, the decree granting an injunction against Peters was reversed with directions that the case be dismissed. We pause to note that since the decision was rendered in the Peters case, the Dental Practice Act then in effect was amended[4] so as to define with specificity what constitutes the practice of dentistry on the one hand, and what functions may be lawfully performed by a dental laboratory on the other hand. Under the Act as amended we have no difficulty, as did the Supreme Court in the Peters case, in determining the line of demarcation which separates the functions of a dentist from those of a dental technician.
In addition to the holding on which the Supreme Court based its conclusion in the Peters case as above stated, the author of the opinion indulged in an academic discussion of a wide range of subjects including bills of attainder, the law of entrapment, the doctrine of clean hands, the quality of testimony offered by paid investigators, and the probable unconstitutionality of the Dental Practice Act then in effect. In the course of this discussion the author opines that if the only evidence of the defendant's guilt is that adduced by paid investigators, than the evidence should be condemned as tainted with the elements of entrapment, or should be considered incompetent in a chancery suit under the doctrine of clean hands. The author of the opinion expressed his personal view to be that there is "nothing more disastrous to fair trial or more insolent to the safeguards with which it is protected, than a conviction secured solely on deliberately purchased evidence." We consider the quoted statement by the author to merely represent his individual views in the matter, and not a definitive statement of law. We are aware of no law or rule of evidence recognized in this state, or in any other state, which excludes as incompetent the testimony of paid investigators. If any such rule of evidence ever gained recognition, not only law enforcement officers charged with the enforcement of the criminal laws of this state and nation, but also all administrative boards charged with the responsibility of preventing the unlawful practice of the many businesses and professions regulated by law, would be at a distinct and almost hopeless disadvantage. Experience has demonstrated that those charged with enforcing the law would be unable to satisfactorily discharge their obligations if they were forced to rely exclusively on the testimony of volunteer witnesses in order to prove the guilt of those charged with the violation of our laws. In most instances the evidence necessary to sustain a conviction for law violations is procured by trained investigators, agents, and informers.
The fact that evidence in a case consists solely of the testimony of paid investigators is material only in determining the credibility of such witnesses and the weight to be accorded their testimony. The function of determining the credibility and the weight of a witness' testimony lies exclusively with the trier of fact, and not with the appellate court. If the trier of fact elects to believe the testimony of a paid investigator, and to base its verdict or judgment on such evidence, the only proper function of an appellate court when reviewing an assault upon the verdict or judgment, is to determine whether the evidence so adduced is competent, relevant, and sufficiently substantial to support the judgment or decree appealed.
*872 The opinion in Peters v. Brown, supra, observes that the investigation there conducted had its genesis in a mere "suspicion." An examination of the original record in that case on file in the Supreme Court reveals that the Dental Society instituted its investigation only after having received a number of complaints from both practicing dentists and laymen. It was the prerogative of the Supreme Court to consider the evidence in that case as constituting a mere "suspicion" if such represented its judgment of the proof revealed by that record. It is our view that the record now before us establishes that the Dental Society, in inaugurating its investigation of appellant Mitchell, had probable cause to believe that appellant Mitchell was actually engaged in the unauthorized practice of dentistry contrary to the laws of Florida. Appellant insists that the type of evidence which motivated the investigation in this case is no different from that which formed the genesis of the investigation in Peters v. Brown, and since the Supreme Court categorized the investigation in Brown to have had its genesis in a mere "suspicion," the same conclusion should be reached by us in the case we now review. It seems to be appellant's position that if an investigation of a person for violating the law of the state has its genesis in a mere suspicion as distinguished from a well-founded belief, then all evidence procured by the investigation must be excluded as incompetent in considering the guilt or innocence of the accused. We are of the view that whether an investigation of one suspected of violating the law had its genesis in a mere suspicion or in a well-founded belief may be material to the trier of fact in judging the credibility of the investigators' testimony, and the weight which should be accorded it in resolving the issues of the case, but it can have no bearing on the admissibility of such testimony as competent evidence in the case. To hold otherwise would create a serious if not disastrous impediment to law enforcement in Florida. We repeat that the function of passing upon the credibility of a witness' testimony, and the weight to which it is entitled, lies exclusively with the chancellor or jury in the trial court and is outside the scope of the appellate court's function under our system of jurisprudence.
Appellant cites as additional authority for his position the decision rendered by the Third District Court of Appeal in Dupuy v. State.[5] The Dupuy case was criminal in nature and consisted of a prosecution against Dupuy, the operator of a dental laboratory, for the offense of practicing dentistry without a license, contrary to the statutes of this state. In reversing the judgment of conviction rendered against Dupuy, the District Court of Appeal found from the evidence revealed by the record in that case that Dupuy had been entrapped by the employees and agents of the State Board of Dental Examiners and, therefore, the conviction could not stand. We do not consider this case to have any material bearing on the case sub judice. As a matter of academic interest it is noted that in the Carter case[6] subsequently decided by the Supreme Court, and involving a criminal prosecution for abortion, the judgment of conviction was sustained against an assault grounded upon the defense of entrapment. In that case the evidence on which the appellant was convicted consisted of the testimony of paid investigators who, like the investigators in the case we now review, provided appellant with an opportunity to violate the criminal statutes relating to abortion. The testimony of the investigators was received in evidence and formed the basis of the jury's verdict of guilt. No contention was made that the testimony of the investigators in the Carter case was incompetent and therefore inadmissible merely because the investigators were paid for their services in the case.
*873 A case strikingly similar to the one we now review is Florida Board of Pharmacy v. Hall.[7] In that case the Board of Pharmacy suspended Hall's license to practice pharmacy upon finding him guilty of having violated the statute prohibiting a licensed pharmacist from permitting any unlicensed person to fill, compound, or dispense prescriptions not under the immediate supervision and direction of a licensed pharmacist. Hall claimed entrapment, which defense was sustained by the circuit court. In reversing the decree exonerating Hall from guilt on the ground that he had been entrapped by the investigators whose services were enlisted by the Board of Pharmacy, the Second District Court of Appeal reviewed the controlling decisions of Florida dealing with the law of entrapment and found in that case that the elements of entrapment were not present in the evidence, and therefore the defense had not been sustained. The testimony on which the court relied to uphold the Board of Pharmacy's order of suspension was that of paid investigators, the competency and admissibility of which was not questioned.
It is our view of the evidence reflected by the record in this case that the chancellor did not abuse his discretion nor commit an error of law in finding that there was probable cause for the appellee board to believe that appellant was engaged in the unauthorized practice of dentistry as a basis for the investigation that was conducted by its paid investigators; that accepting the testimony of these investigators at face value the chancellor was justified in concluding that they merely afforded appellant an opportunity of performing a service which constitutes the practice of dentistry under the Dental Practice Act of this state, and that appellant's performance of this service was not motivated by an existing emergency nor an act of compassion. We conclude that the chancellor was correct in finding that the elements of entrapment, or its counterpart in equity, the doctrine of clean hands, are not present in this case and therefore do not preclude appellees from the relief they seek by their complaint for an injunction. The decree appealed is accordingly affirmed.
Affirmed.
STURGIS, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] F.S. Section 466.04, F.S.A.
[2] F.S. Section 466.03, F.S.A.
[3] Peters v. Brown et al., (Fla. 1951) 55 So.2d 334.
[4] Chapter 61-471, Laws of Florida, Acts of 1961.
[5] Dupuy v. State of Florida, (Fla.App. 1962) 141 So.2d 825.
[6] Carter v. State of Florida, (Fla. 1963) 155 So.2d 787.
[7] Florida Board of Pharmacy v. Hall, (Fla.App. 1963) 157 So.2d 824.