AMERICAN TELEVISION AND COMMUNICATIONS CORPORATION, a Delaware corporation, Plaintiff-Appellant,

v.

John MANNING, individually and d/b/a Micro-King Electronics; Edward Stoker, individually and d/b/a Micro-Wave Antenna Sales; Larry Wagster and Bob Doe, a person whose first name is Bob and whose last name is presently unknown, individually and d/b/a Video Headquarters; and Steven Ritter, individually and d/b/a Pirate Video & Micro-Wave; Don A. Billstone; and other persons whose names and addresses are unknown who are acting in concert with said persons and businesses, Defendants-Appellees,

and

Don Wickman and Tammy Wickman, Defendants.

AMERICAN TELEVISION AND COMMUNICATIONS CORPORATION, a Delaware corporation, Plaintiff-Appellant,

v.

John MANNING, individually and d/b/a Micro-King Electronics; Edward Stoker, individually and d/b/a Micro-Wave Antenna Sales; Larry Wagster and Bob Doe, a person whose first name is Bob and whose last name is presently unknown, individually and d/b/a Video Headquarters; and other persons whose names and addresses are unknown who are acting in concert with said persons and businesses, Defendants-Appellees,

and

Don Wickman, Tammy Wickman, and Steven Ritter, individually and d/b/a Pirate Video & Microwave, and Don A. Billstone, Defendants.

Nos. 81CA0128, 81CA0601.

Colorado Court of Appeals.

June 17, 1982.

Rehearing Denied July 22, 1982.

Holland & Hart, Patrick M. Westfeldt, Robert E. Benson, Joseph W. Halpern, Wiley E. Mayne, Denver, for plaintiff-appellant.

Richard M. Kranzler, Wheat Ridge, for defendants-appellees Edward Stoker, individually and d/b/a Micro-Wave Antenna Sales.

Larry Wagster, pro se.

Clifford J. Barnard, Boulder, for defendant-appellee Bob (last name unknown) individually and d/b/a Video Headquarters.

Stephen N. Berkowitz, Denver, for Don Wickman & Tammy Wickman, d/b/a Pirate Video and Microwave.

ENOCH, Chief Judge.

In case No. 81CA0128, plaintiff, American Television and Communications Corporation (ATC), appeals from a judgment denying its motion for a preliminary injunction. The judgment was entered after ATC had presented its evidence but prior to presentation of defendants' evidence.

While the appeal on the preliminary injunction was pending, the trial court granted defendants' motion to dismiss ATC's first claim for relief, and certified its ruling to be a final, appealable judgment pursuant to C.R.C.P. 54(b). ATC appealed the dismissal of its first claim for relief in 81CA0601. Both appeals have been consolidated for determination. We reverse the denial of the preliminary injunction and remand for further proceedings (81CA0128). We affirm the dismissal of the first claim for relief (81CA0601).

Evidence introduced by plaintiffs at this stage of the proceedings is undisputed. ATC is engaged in the business of furnishing television programs to residents of the Denver Metropolitan Area. ATC purchases the exclusive rights to display the programs from Home Box Office, Inc., (HBO) and pays common carriers to deliver the programs via microwave from the point of origin. The microwave signal ordinarily travels by satellite to an earth receiving station in Denver, where it is relayed to a microwave antenna atop Lookout Mountain. From this antenna, a common carrier under agreement with ATC provides "multi-point distribution service," see 47 C.F.R. § 21.-900–21.908, transmitting the signal to ATC's home subscribers.

ATC advertises the programming, installs and leases to each subscriber a special antenna and down converter which makes the signal capable of viewing on the ordinary television set, and services the equipment after installation. ATC finances its operation by charging each subscriber a refundable equipment deposit, an installation fee, and a monthly charge.

Defendants advertise, sell, and install antennas and down converters which are capable of receiving the HBO signal. The antennas are capable of receiving signals of various frequencies, but are designed such that the center of their receiving capability matches the HBO frequency.

Only plaintiff presented evidence during the hearing on the preliminary injunction, and it was undisputed that defendants advertised that the equipment they were selling was capable of receiving the HBO signal and that some defendants installed and adjusted the equipment for purchasers so that it would receive HBO. The "pirate" equipment is easily concealed, and some of it is visually indistinguishable from the equipment installed by ATC.

ATC sued defendants for damages, both actual and exemplary, and for injunctive relief. The first claim for relief incorporated by reference the facts summarized above and alleged that defendants' conduct violated § 18–9–309, C.R.S.1973 (1978 Repl.Vol. 8), which prohibits sale of illegal telecommunications equipment. The second claim for relief alleged that defendants' conduct constituted the tort of conversion. The third claim for relief is based on an allegation of unfair competition. ATC's fourth claim for relief alleged that defendants made false representations in connection with the sale of the devices and that such misrepresentations constituted deceptive trade practices under § 6–1–105(1), C.R.S. 1973. The remaining claims for relief are not germane to this appeal.

## I. 81CA0128

### The denial of ATC's motion for Preliminary Injunction

The granting or denial of a preliminary injunction is a decision which lies within the trial court's sound discretion, and

the trial court's ruling will be reversed only when there has been an abuse of that discretion. *Allen v. Denver,* 142 Colo. 487, 351 P.2d 390 (1960); *Macleod v. Miller,* Colo. App. 612 P.2d 1158 (1980). Factors to consider when deciding whether a preliminary injunction should be granted pursuant to C.R.C.P. 65(a) include: (1) Whether there is a reasonable probability that plaintiff will succeed on the merits, *Combined Communications Corp. v. Denver,* 186 Colo. 443, 528 P.2d 249 (1974); (2) Whether there is a danger of real, immediate, and irreparable injury to the plaintiff which is preventable by the injunction, *Macleod v. Miller, supra;* (3) Whether the plaintiff has an adequate legal remedy, *American Investors Life Insurance Co. v. Green Shield Plan, Inc.,* 145 Colo. 188, 358 P.2d 473 (1960); (4) Whether the injunction will preserve the status quo during the time prior to the trial on the merits, *Rivera v. Civil Service Commission,* 34 Colo.App. 152, 529 P.2d 1347 (1974); (5) Whether the public interest would be served by the injunction; and (6) Whether the balance of equities favors the injunction, *Combined Communications Corp. v. Denver, supra.*

## A.

### Probability of Success on the Merits

ATC first contends that the trial court erred in finding that there was not a reasonable probability that it would succeed on the merits. We agree.

■ In resolving the problem of whether plaintiff is likely to succeed on the merits, we need address only plaintiff's third claim for relief, based on the common law tort of unfair competition. We are satisfied here that the undisputed facts presented at the hearing on the preliminary injunction establish the elements of the common law torts of unfair competition and misappropriation as recognized in *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), and applied in *KMLA Broadcasting Corp. v. 20th Century Cigarette Vendors Corp.,* 264 F.Supp. 35 (C.D.Calif.1967), a case involving similar facts.

In *International News Service,* Associated Press (AP) sued International News Service (INS), a competing news service, alleging that INS was engaging in unfair competition by, among other things, copying AP's east coast press releases from posted bulletins and early edition newspapers, and wiring them to INS's west coast affiliate newspapers for publication. The news which INS "pirated" was gathered by AP at considerable cost, which AP recouped by collecting a fee for transmission of the news from each member newspaper. The district court in *INS,* like the trial court in this case, refused to issue a preliminary injunction because the case involved uncertain rights and there was no precedent for the issuance of an injunction under the circumstances. The Supreme Court reversed, characterizing INS's conduct as unfair competition because INS took material that was acquired by AP "as the result of organization and the expenditure of labor skill and money and which is saleable by [AP] for money," and, for commercial purposes, sold it, "endeavoring to reap where it has not sown." The court went on to state that:

"Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business." 248 U.S. at 240, 39 S.Ct. at 72–3, 63 L.Ed. at 221.

*See also McCord Co. v. Plotnick,* 108 Cal. App.2d 392, 239 P.2d 32 (1951).

The principle of *INS* was applied in *KMLA, supra,* where KMLA Broadcasting Corporation, an FM radio station, was broadcasting a normal FM signal, intended for the general public, and a special frequency multiplex background signal intend-

ed for receipt by paying subscribers who leased special equipment to receive and decode the special signal. Defendants managed to acquire the special equipment, from electronics manufacturers, and installed it at various commercial establishments which were willing to allow placement of defendant's vending machines on the premises. These establishments then used the equipment to intercept KMLA's subscription broadcast without paying for it. KMLA brought an action to enjoin the manufacture, sale, or distribution of the equipment, and the district court held that KLMA was entitled to a remedy for the common law tort of unfair competition. We see no basic distinction between the subscription radio service in *KLMA, supra,* and the pay television service provided by ATC in this case. *Chartwell Communications Group v. Westbrook,* 637 F.2d 459 (6th Cir. 1980); *National Subscription Television v. S & H TV,* 644 F.2d 820 (9th Cir. 1981).

Although some courts and commentators have attempted to limit the rule in *INS* to cases in which one competitor engaged in "palming off," *i.e.,* misrepresenting work of another as his own, *see, e.g., Herald Publishing Co. v. Florida Antennavision, Inc.,* 173 So.2d 469 (Fla.Dist.Ct.App.1965); Chafee, *Unfair Competition,* 53 Harv.L.Rev. 1289, 1315 (1940), we agree with those courts and commentators which have interpreted *INS* to prohibit unfair misappropriation and the exploitation of a competitor's business values. *KMLA, supra; Data Cash Systems Inc. v. JS & A Group, Inc.,* 480 F.Supp. 1063 (N.D.Ill.1979), *aff'd* 628 F.2d 1038 (1980); *Adolph Coors Co. v. A. Genderson & Sons, Inc.,* 486 F.Supp. 131 (D.Colo. 1980); *Toho Co. Ltd., v. Sears, Roebuck & Co.,* 645 F.2d 788 (9th Cir. 1981); 2 R. Callman, *The Law of Unfair Competition Trademarks & Monopolies* § 60.3 & § 61.1 (3rd Ed. 1968 and 1981 Supp.); Note, *Federal Communications Law & Unfair Competition: Clearing up Some Static for Pay TV & Radio; Unauthorized Reception of Non-Broadcast Radio Communications,* 56 Calif. L.Rev. 526 (1968); Note, *Unfair Competition—Associated Press Doctrine—Unauthorized Reception & Use of Multiplex Channel FM Transmissions Intended for Subscribers Constitutes Unfair Competition,* 9 Ariz.L.Rev. 315 (1967). *See generally* Annot., 40 A.L.R.3d 566 (1971).

Although it has not been decided in Colorado whether the principle in *INS* and its progeny is included within the Colorado common law of unfair competition, several opinions of our Supreme Court convince us that, contrary to the trial court's finding, there is a reasonable probability that such a cause of action is available. *Cf. Fort v. Co-operative Farmers' Exchange,* 81 Colo. 431, 256 P. 319 (1927); *Kirby v. Union Pacific Ry. Co.,* 51 Colo. 509, 119 P. 1042 (1911). There has also been a trend in Colorado to increase the protection afforded commercial rights, such as trade names and trademarks. *See Adolph Coors Co., supra; United States Bank v. Mesa United Bank,* 41 Colo.App. 552, 595 P.2d 259 (1978). *See also Fort v. People ex rel. Co-operative Farmers' Exchange,* 81 Colo. 420, 256 P. 325 (1927).

We therefore hold that the facts presented established the elements of the common law tort of unfair competition and that there is reasonable probability that plaintiff would be successful under this claim.

In light of this holding we need not address the issue of whether there is a reasonable probability that ATC will succeed on the merits of its other claims.

## B.

### Irreparable Harm and Adequacy of Legal Remedy

■ ATC also contends that the trial court abused its discretion in finding that ATC's injury, if any, could be compensated with money damages. We agree.

Federal courts have held that conduct identical to defendants' in this case inflicts irreparable harm on the providers of pay television service. In *Chartwell Communications Group v. Westbrook, supra,* the court noted that each sale of illegal receiving and decoding equipment permanently deprived the plaintiff of a customer. And,

in *HBO Inc., v. Pay TV of Greater New York,* 467 F.Supp. 525 (E.D.N.Y.1979), the court noted this loss of customers would permanently impair plaintiff's reputation and ability to cultivate goodwill in the community.

As ATC argues, the computation of monetary damages is impeded by the difficulty in determining the number of sales by defendants as well as the amount of damages to be awarded for each lost sale. A portion of ATC's revenue is derived by leasing the proper equipment. Therefore, ATC would be required to present evidence concerning, not only the amount of the monthly charge, but also the duration of the average lease. It has been held in a situation involving a breach of covenant not to compete that difficulty in measuring the monetary value of a lost customer raises a presumption that legal damages are inadequate. *Ditus v. Beahm,* 123 Colo. 550, 232 P.2d 184 (1951).

Therefore, we hold that, based on the evidence presented, defendant's continuing conduct is likely to cause irreparable harm to ATC's business.

### C.

### Preservation of the Status Quo, and Protection of the Public Interest

■ The trial court also ruled that a preliminary injunction would not preserve the status quo because defendants' business would be completely closed and that the public interest would not be served by an injunction because the public benefitted from low cost receiving equipment and free competition. The court has misinterpreted the purpose of an injunction. The purpose of an injunction is to stop the alleged unauthorized actions of defendant, to prevent any further damage to plaintiff. *Graham v. Hoyl,* 157 Colo. 338, 402 P.2d 604 (1965). The defendant is protected from damage in the event plaintiff does not prevail by the bond which the court requires plaintiff to post. C.R.C.P. 65(c). Here, on the basis of the evidence at this stage of the proceedings, plaintiff is entitled to an injunction to prevent defendants from continuing in their alleged unauthorized activity, and the pub-

lic does not have an interest that should be protected when that interest is a benefit being derived from the alleged unauthorized activity.

### D.

### Balancing of Equities

■ ATC argues that the trial court should not have found that its investigative techniques were a factor weighing against granting a preliminary injunction. We agree.

ATC employed private investigators to pose as customers and purchase antennas and down converters from defendants and to report as to whether defendants were performing installation of the equipment or were making representations respecting the equipment's ability to receive HBO. The trial court noted that the investigator had purchased unauthorized equipment in violation of § 18–9–309, C.R.S.1973 (1978 Repl. Vol. 8), and had participated in defendant's violation, if any, of the statute. We do not agree with the court's characterization of the investigator's conduct. *See Mitchell v. Gillespie,* 164 So.2d 867 (Fla.Dist.Ct.App. 1964), *aff'd,* 172 So.2d 819 (Fla.1965). The investigators did not violate § 18–9–309, C.R.S.1973 (1978 Repl.Vol. 8) because they had no intent to steal a communications service, a necessary element of the criminal offense.

Therefore, the trial court's denial of ATC's motion for preliminary injunction must be reversed, and the cause must be remanded for defendants to present any evidence they may have concerning the preliminary injunction and for the trial court to render its decision in accordance with the views expressed herein.

### II. 81CA0601

### Dismissal of ATC's First Claim for Relief

ATC contends that the trial court erred in dismissing the first claim for relief on the basis that ATC lacks standing to enforce a criminal statute. We find no error in the trial court's order as to this claim.

The general rule is that an injunction may not be obtained to restrain the commission of a crime. *State v. Tolbert,* 98 Colo. 433, 56 P.2d 45 (1936). Moreover, where a statute creates legal duties which were non-existent at common law and provides a particular means for their enforcement, the designated remedy is exclusive, and courts should not imply new remedies to accompany the new right in the absence of some legislative indication or other circumstances that such a result was intended. *Silverstein v. Sisters of Charity,* 38 Colo.App. 286, 559 P.2d 716 (1976). Conversely, where rights or interests are entitled to protection under a tort, contract, or other common law principle, the passage of a statute providing penal protection for the same rights and interests will not, in the absence of clear legislative intent, bar a private suit to enjoin the wrongful conduct. *Fort v. Co-operative Farmers Exchange, supra; Heber v. Portland Gold Mining Co.,* 64 Colo. 352, 172 P. 12 (1918).

Although private suits which seek to enforce the criminal law are generally inappropriate, criminal statutes are often relied upon by the courts in fashioning common law tort principles. *Restatement (Second) of Torts* § 874A (1977) (especially comment e). *See, e.g., Hamilton v. Gravinsky,* 28 Colo.App. 408, 474 P.2d 185 (1970).

Here, ATC's first claim for relief alleges only that defendants' conduct constituted a violation of § 18–9–309, C.R.S. 1973 (1978 Repl.Vol. 8). There is no suggestion in the complaint that ATC seeks to use this statute, at this stage, to buttress its common law claims, and ATC's supplemental brief specifically states that the first claim for relief is entirely independent of the common law claims contained in other parts of the complaint. Although the statute in question may be of some utility to ATC's attempt to prove its common law claims, and does not preclude the assertion of those claims, ATC may not bring a private suit merely to enjoin the commission of a crime.

Since ATC's first claim for relief was based solely on the statute, the trial court properly dismissed this claim.

The judgment denying the preliminary injunction in case No. 81CA0128 is reversed, and the cause is remanded for further proceedings. The judgment dismissing ATC's first claim for relief, in case No. 81CA0601, is affirmed.

KIRSHBAUM and TURSI, JJ., concur.