POWELL PRODUCTS, INC., Plaintiff,

v.

Frederick W. MARKS, III; Accessories Plus, Inc.; Wormser Corporation, Inc.; Alan Wormser, David Wormser, Jose E. Figueroa, Steve Wormser, and Frederick W. Marks, II, Defendants.

Civil Action No. 95–B–554 (Consol. with 95–B–982).

United States District Court, D. Colorado.

Dec. 17, 1996.

Kirk S. Samelson, Samelson, Dodge & Currey, P.C., Colorado Springs, CO, Bruce E. Rohde, Gary Ceriani, Davis & Ceriani, P.C., Denver, CO, for Plaintiff.

William D. Meyer, Michael E. Miner, Hutchinson Black and Cook, L.L.C., Boulder, CO, for Defendants.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Defendants have filed four separate motions for summary judgment on claims against particular defendants. Plaintiff opposes all four motions. The following claims are at issue in the summary judgment motions:

1. Misappropriation of trade secrets against David Wormser, Steve Wormser, and Frederick Marks II;

2. Unfair competition against all defendants except Frederick Marks III (Trey Marks);

3. Interference with existing and prospective business relations against all defendants;

4. Conversion against all defendants except Trey Marks;

5. Civil conspiracy against all defendants except Trey Marks.

Several other claims remain in the case but are not at issue in the pending motions for summary judgment. For example, plaintiff has claimed that all defendants misappropriated trade secrets, but only David and Steve Wormser and Frederick Marks II move for summary judgment on that claim. In addition, plaintiff's claim for unjust enrichment has not been addressed in defendants' motions.

Defendants argue that several of plaintiff's claims are preempted by Colorado's version of the Uniform Trade Secrets Act, Colo.Rev. Stat. § 7–74–101 et seq. (1986). In addition, defendants contend that no genuine issues of fact remain with regard to the surviving claims and that they are entitled to summary judgment. For the following reasons, I will grant in part and deny in part defendants' motions.

## I.

The following facts are undisputed or, if disputed, are viewed in a light most favorable to plaintiff. Plaintiff is a manufacturer located in Colorado Springs, Colorado, which produces plastic applicators having foam tips for use in the cosmetics industry. For years, the foam tips that were made by plaintiff had to be attached to plastic handles by others, primarily overseas locations with cheap labor. Beginning in the early 1980's, plaintiff attempted to develop a machine to produce applicators itself. After an eight year effort, plaintiff successfully designed and built a machine that could quickly produce high quality applicators.

Plaintiff's machines were kept in secure areas in its manufacturing facilities with visible warnings to individuals visiting plaintiff's facilities that the manufacturing area was secured. Powell also kept blueprints and maintenance manuals for the machines in secured areas. Starting in 1992, plaintiff had its employees sign employee manuals that included a provision regarding nondisclosure of trade secrets. Plaintiff considers the design of its machines to be highly confidential and a trade secret.

Trey Marks worked for plaintiff in 1992. He signed the employee handbook, including the provision for nondisclosure of trade secrets. Prior to working for plaintiff, Trey Marks had no experience in the design or building of manufacturing equipment or in the cosmetics industry.

Upon quitting his job with plaintiff, Trey Marks took with him drawings and specifications of plaintiff's confidential machine design. Marks went to work for Kaiser Products, which provided plastic injection molding for plaintiff. While there, plaintiff asserts that Marks sabotaged products sent to plaintiff.

Marks then began efforts to build an applicator machine, using plaintiff's drawings and specifications. He hired Jose Figueroa, who had worked for both plaintiff and Kaiser, to help construct the machine. Marks also approached the Wormser Corporation and its officers, Steve Wormser, Alan Wormser, and David Wormser regarding financing to build his machine. Wormser Corporation was a customer of plaintiff, and plaintiff had a contract with Wormser Corporation to provide it with applicators that Wormser Corporation

then sold to Avon. Steve Wormser had been in the business of selling cosmetics accessories for thirty-five years and had never before been involved in manufacturing applicators.

Steve, Alan, and David Wormser and the Wormser Corporation agreed to contribute money to finance Trey Marks in his efforts to build the machine. In addition, the Wormsers and the Wormser Corporation contributed to the formation of Accessories Plus, a new corporation that would produce applicators using the machine Trey Marks was to build. The individual Wormsers and Trey Marks are all owners of Accessories Plus.

Trey Marks successfully built a machine using the drawings and specifications of plaintiff, and Accessories Plus began selling applicators to, among others, the Wormser Corporation. Frederick Marks II, Trey's father, was hired by Accessories Plus to work on existing machines and help design new ones.

In June 1995, I preliminarily enjoined the defendants from various activities regarding applicator production using machines derived from plaintiff's trade secret. In conjunction with the preliminary injunction, I held that plaintiff owned a trade secret (singular) in the design of its machine. In this litigation, however, plaintiff apparently argues that it has more than one trade secret relating to applicator production. For the purposes of this motion, therefore, I will refer to plaintiff's trade secrets (plural).

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. When the moving party is the defendant, the operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Mares*, 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White*, 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

## III.

■ I first address the preemptive effects of the Uniform Trade Secrets Act (UTSA), Colo.Rev.Stat. § 7–74–101 et seq. Defen-

dants argue that plaintiff's claims for unfair competition, interference with prospective and existing business relationships, conversion, and civil conspiracy are all preempted by the UTSA. I disagree. Although there is scarce precedent interpreting the UTSA in Colorado, I am convinced that it does not sweep so broadly.

Colo.Rev.Stat. § 7–74–108 states:

(1) Except as provided in subsection (2) of this section, this article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(2) This article does not affect:

(a) Contractual remedies, whether or not based upon misappropriation of a trade secret;

(b) Other civil remedies that are not based upon a misappropriation of a trade secret;

.    .    .    .    .

Accordingly, the UTSA only preempts common law claims that "conflict" with its provisions. Unfortunately, Colorado courts have not yet defined what constitutes a conflict between the UTSA and the common law. Nor have courts in other UTSA jurisdictions been uniform in their interpretation of the preemption section of the Act.

Several courts have stated that where a plaintiff alleges in his complaint that information was misappropriated and that such information constituted trade secrets, all claims that are factually related to that misappropriation are preempted. *See, e.g., Hutchison v. KFC Corp.*, 809 F.Supp. 68, 71 (D.Nev.1992). Other courts reason that a plaintiff should be permitted to proceed upon all causes of action "to the extent that the causes of action have 'more' to their factual allegations than the mere use or misappropriation of trade secrets." *See Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F.Supp. 202, 204–05 (D.Minn.1988). Finally, some courts have held that common law tort claims are preempted only "to the extent directed at trade secret misappropriation," implying that certain common law claims do not depend upon the information misused being in the nature of a trade secret. *Web Communica-*

*tions Group, Inc. v. Gateway 2000, Inc.*, 889 F.Supp. 316, 321 (N.D.Ill.1995).

I disagree with those courts that have applied a blanket preemption to all claims that arise from a set of circumstances that happen to involve information that the plaintiff claims is in the nature of a trade secret. "The preemption provisions can be somewhat worrisome if they are applied mechanistically or overly conceptually. Our common law is richly flexible in redressing wrongs for improper conduct which in full or in part involves the use of information derived from the plaintiff." Roger M. Milgrim, *Milgrim on Trade Secrets*, § 1.01[4], at 1–68.14 (1996). It is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets.

Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets. For example, here, plaintiff claims that defendants interfered with its business relationships. Although plaintiff contends that its manufacturing process and machine are protectable trade secrets, its claims for interference do not depend upon that determination. Defendants could be liable for interference with business relations even if they did not misappropriate any trade secrets from plaintiff. Accordingly, those claims would not conflict with the UTSA and are not preempted.

In addition, a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the UTSA. For example, here, plaintiff alleges that defendants conspired to misappropriate its trade secrets, which requires an agreement, which is not an element of a misappropriation claim under the UTSA. This claim too does not conflict with the UTSA and will not be preempted.

■ Preemption is only appropriate where "other claims are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Milgrim, supra.* Plaintiff's conversion claim is a good example of a claim that is, at least in part, preempted

by the UTSA. In its conversion claim, plaintiffs allege that all defendants except Trey Marks stole trade secrets, mechanical drawings, blueprints, and specifications of the plaintiff's machine. To the extent that plaintiff's claim seeks recovery for defendants' misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets. If the design of the plaintiff's machine is not a trade secret, plaintiff has no property right in its design, and it therefore would have no claim. Alternatively, if the design is a trade secret, plaintiff's claim is preempted by the UTSA. Because plaintiff's claim also seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the UTSA, plaintiff's conversion claim is not entirely preempted.

Most problematic is plaintiff's claim for unfair competition, largely because the parties cannot agree as to the elements a plaintiff is required to prove for an unfair competition claim to succeed. The plaintiff paints unfair competition as a catch-all tort under which a jury may decide whether a defendant's actions are deserving of sanction according to general notions of fairness and justice. The defendants, alternatively, would pigeon-hole unfair competition to situations involving "palming off" or where a defendant intercepts communications. The truth, as it often does, would appear to lie somewhere in between.

### A. *Definition of Unfair Competition in Colorado*

"The law of unfair competition has its roots in the common-law tort of deceit." *University of Colorado Foundation, Inc. v. American Cyanamid*, 880 F.Supp. 1387, 1403 (D.Colo.1995) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 981, 103 L.Ed.2d 118 (1989)). For many years, the tort was limited to situations involving "palming off." *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 136 (D.Colo.1980). Eventually, the tort was broadened beyond "palming off" claims: "what constitutes unfair competition is a question of fact; no inflexible rules gov-

ern the applicability of the doctrine," but the "most important consideration" remained "whether defendant's conduct will confuse or deceive the public." *Id.*

In 1982, the Colorado Court of Appeals further extended the scope of unfair competition claims. In *American Television and Communic. Corp. v. Manning*, 651 P.2d 440 (Colo.Ct.App.1982), the plaintiffs held the exclusive rights to display programs for Home Box Office (HBO). Plaintiff leased to each of its subscribers a special antenna and converters capable of receiving programs. Defendants installed antennas and converters capable of receiving the HBO signal. The court reversed a denial of preliminary injunction, finding that plaintiffs had a likelihood of success on the merits of its unfair competition claim.

*Manning* relied primarily upon the reasoning set forth in *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). There, AP alleged that INS was engaging in unfair competition by copying AP's east coast press releases from early edition newspapers and wiring them to INS's west coast affiliate for publication. The Court characterized INS's actions as unfair competition because AP had put considerable effort into gathering the news, and INS was "endeavoring to reap where it has not sown." *Id.* at 240, 39 S.Ct. at 72. *Manning* seized upon the broad language of *INS*, and added some expansive dicta of its own. The court stated that the tort of unfair competition "prohibit[s] unfair misappropriation and exploitation of a competitor's business values." *Manning*, 651 P.2d at 445.

Plaintiff argues that *Manning* opens the door for unfair competition claims whenever a defendant capitalizes on the efforts, skill, and labor of another. Indeed, *Manning* has spawned several cases in which courts have broadly defined unfair competition in dicta. *See, e.g., Heller v. Lexton–Ancira Real Estate Fund, Ltd.*, 809 P.2d 1016, 1021 (Colo.Ct. App.1990) (stating that torts of unfair competition and misappropriation prohibit the appropriation of plaintiff's expenditure of labor, skill, and money), *rev'd on other grounds*, 826 P.2d 819 (Colo.1992). Plaintiff, however, is unable to cite a single case, nor am I aware

of a Colorado case, in which an unfair competition claim was brought under the present circumstances.

This is clearly not a "palming off" case. Nor is there any indication that the public would be deceived by defendant's actions here. Rather, plaintiff relies upon the more recent developments in unfair competition law. Even given the broad dicta in *INS, Manning*, and *Heller*, unfair competition does not extend to encompass plaintiff's case here. Unlike in all of the cited cases, plaintiff's claim relates to the misappropriation of ideas that could have been protected by other means, namely, trade secret protection. *INS, Manning*, and *Heller*, in contrast, each involve efforts by a plaintiff that were not otherwise protectable under the law. In *INS*, for example, AP could not protect the substance of its news reports via copyright because ideas are not copyrightable, only the expressions thereof. *See, e.g., Nichols v. Universal Pictures Corp.* 45 F.2d 119 (2d Cir.), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1930). Similarly, the plaintiffs in *Manning* could not protect their rights via the copyright laws, otherwise plaintiffs' claim for unfair competition would have been preempted by federal copyright laws. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 980–81, 103 L.Ed.2d 118 (1989); *see also Heller*, 809 P.2d 1016 (involving allegedly misappropriated value in a trade show that would not otherwise be protectable).

Therefore, those courts recognized a need to craft a remedy to right the wrongs suffered by the plaintiffs. Unfair competition was the answer. I cannot conclude, however, that the Colorado courts intended to expand unfair competition to cover every instance in which an individual capitalizes upon the skill and efforts of another.

Although neither the parties nor I could locate any case in which the Colorado courts have had an opportunity to decide this question in the context of this case, I am convinced that unfair competition cannot be expanded so broadly as the plaintiff proposes. Accordingly, I conclude that plaintiff cannot succeed on its claim for unfair competition, regardless of whether its machine design is found to be a trade secret. If plaintiff wanted protection for its machine, it had a ready avenue under the law, and, indeed, plaintiff ardently contends that it has protected its ideas by establishing them as trade secrets. Should plaintiff fail to establish that it does own protectable trade secrets, however, it cannot fall back on a general theory of unfair competition. To credit plaintiff's argument would make the establishment of the requirements for a protectable trade secret under the UTSA essentially meaningless. Therefore, the preemption question is moot, and I will grant defendants' motion for summary judgment on plaintiff's unfair competition claims.

## IV.

I turn next to the remaining claims at issue in defendants' motions. Because two cases were consolidated, two complaints were filed. The first complaint relates to claims plaintiff asserts against all defendants except Trey Marks, and the second complaint relates to those claims asserted against only Trey Marks. I will address the complaints separately.

### A. *Motions on Claims Against all Defendants Except Trey Marks*

Plaintiff brings five claims against these defendants that are at issue in defendants' motions. Defendants have not addressed plaintiff's claim for unjust enrichment. In addition, only certain defendants move for summary judgment with regard to particular claims. The following claims are at issue in the pending motions:

1. Unfair competition;

2. Interference with prospective and existing business relations;

3. Conversion;

4. Civil conspiracy; and

5. Misappropriation of trade secrets.

As discussed, I will grant summary judgment on plaintiff's claims for unfair competition against all defendants. I will address the other four claims at issue in turn.

### 1. Interference with Prospective and Existing Business Relationships

The parties treat this as a claim for both intentional interference with a contractual obligation and/or tortious interference with prospective business advantage, each of which is a recognized tort in Colorado. I will do the same.

To prove its claim for intentional interference with a contractual obligation, plaintiff must show that:

(1) plaintiff had a contract with a third person;

(2) defendant knew of the contract or had knowledge of other facts which reasonably should have caused him to know of it;

(3) with such knowledge, the defendant by words or conduct, or both, intentionally induced the third party to terminate or not to perform his contract with the plaintiff, or interfered with the third party's performance of the contract, thereby causing the third party not to perform or to terminate the contract with the plaintiff;

(4) defendant's words or conduct, or both, caused the plaintiff to incur damages.

C.J.I.Civ.3d. 24:1.

The defendants argue that plaintiff has not produced any evidence regarding a contract with a third party. Further, defendants argue that even if plaintiff did produce evidence of a contract, it has not produced any evidence that these defendants interfered with that contract. Plaintiff responds by pointing to evidence of at least one contract with Wormser Corporation for the sale of applicators, and plaintiff claims that at least some of the defendants interfered with that contract.

It appears clear that, at least at one time, plaintiff had a contract with Wormser Corporation. Exh. B to Mot. for SJ of Trey Marks. In October 1992, Alan Wormser and Steve Robards of Powell signed a letter agreement in which Wormser agreed to buy certain applicators exclusively from plaintiff for resale to Avon. In return, plaintiff agreed not to sell applicators directly to Avon. The agreement was to renew automatically each year so long as a gross sales volume of $75,000 was reached.

Defendants contend that the agreement in question was more of an "understanding" than a contract. Dep. of Alan Wormser, Exh. C to Mot. for SJ of Trey Marks. On its face, however, the signed agreement is an unambiguous and enforceable contract. Where a contract is unambiguous in its terms, it must be enforced as written. *Griffin v. United Bank*, 198. Colo. 239, 242, 599 P.2d 866, 868 (1979).

Defendants next argue that the agreement, even if a contract, expired by its own terms at the end of 1994. Defendants do not contend that the minimum gross sales volume was not reached. Rather, defendants contend that the contract was orally modified at a later date to terminate at the end of 1994. Dep. of Alan Wormser, Exh. C to Mot. for SJ of Trey Marks. Robards denies that the contract was modified, and defendants can produce no other evidence regarding the alleged modification. Robards Dep. p. 65. Therefore, there is at least a genuine issue whether the contract between Wormser Corporation and plaintiff remained enforceable after 1994. For the purposes of these motions, I must assume that the contract remained in force after 1994.

█ The next issue is who, if any, of the defendants interfered with the contract between Wormser Corporation and plaintiff. Plaintiff presents no evidence regarding the liability of Jose Figueroa or Frederick Marks II. Accordingly, summary judgment will be granted on this claim as to those defendants. Similarly, Wormser Corporation cannot be liable for interfering with its own contract with plaintiff, and summary judgment will also be granted in favor of Wormser Corporation. The remaining defendants (excluding Trey Marks) on this claim are Steve Wormser, David Wormser, Alan Wormser and Accessories Plus.

█ Plaintiff contends that there is at least a genuine issue of material fact regarding the liability of the remaining four defendants. Plaintiff apparently contends that Steve, Alan, and David Wormser, as officers of Wormser Corporation, knew or should have known of the contract between plaintiff and Wormser Corporation. However, offi-

**1478**

cers of a corporation acting in their official capacity generally cannot be liable for inducing the corporation to breach a contract. *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.Ct. App.1985). Otherwise, every time a corporation was sued for breach of contract, each of its officers who participated in the decision to breach would also be liable for intentional interference with contractual relations, which would be nonsensical.

In rare circumstances, a corporate officer can be liable for inducing the corporation to breach a contract with a third party. *Id.* Where a corporate officer is motivated "by a desire to harm one of the contracting parties or to interfere in contractual relations between the parties," he can be liable. *Trimble v. City and County of Denver,* 697 P.2d 716, 726 (Colo.1985). This exception to the general immunity of corporate officers acting within the scope of their duties is normally invoked where the officer is motivated out of personal animus towards one or both of the contracting parties. *See id.; Zappa,* 706 P.2d at 442; *Cronk v. Intermountain Rural Elec. Assoc.,* 765 P.2d 619, 623 (Colo.Ct.App. 1988).

■ There is no evidence that the Wormsers were not acting in their official capacities for Wormser Corporation when they made the decision to cease buying from plaintiff. Nor is there any evidence that the Wormsers were motivated solely by a desire to breach or interfere with the contract with plaintiff. Rather, the record, if anything, indicates that the Wormsers were motivated out of a desire to benefit Wormser Corporation, wholly apart from any incidental effects on plaintiff. This case is clearly distinguishable from the cases in which a corporate officer, motivated out of personal spite or animus, induced a breach by the corporation of a contract with a third party.

In addition, the fact that the Wormsers were involved in the creation and operation of Accessories Plus is not material. The creation of Accessories Plus was merely an instrument the Wormsers used to allow them to stop buying from plaintiff. This situation is no different than if the Wormsers, in their official capacities, used a telephone or other device to allow them to breach the contract

between Wormser Corporation and plaintiff. Accordingly, I conclude as a matter of law that the individual Wormsers cannot be liable for intentional interference with plaintiff's contract with Wormser Corporation, and I will grant summary judgment on this claim as to all of the Wormsers individually.

■ The liability of Accessories Plus is not legally barred. Nevertheless, plaintiff has presented no evidence that Accessories Plus, as an entity, did anything to induce Wormser Corporation not to perform its contract with plaintiff. At most, Accessories Plus allowed Wormser's breach by presenting it with an alternative that may have been derived from the misappropriation of plaintiff's trade secrets. That argument, however, is better suited to a calculation of damages caused by the alleged misappropriation. That Accessories Plus began making applicators and Wormser Corporation decided to buy from Accessories Plus rather than plaintiff is insufficient as a matter of law to meet the standard for intentional interference with contractual relations. Accordingly, I will grant summary judgment on this claim as to Accessories Plus as well.

■ To prove its claim for intentional interference with prospective business advantage, plaintiffs must show intentional and improper interference preventing the formation of a contract. Restatement of Torts, 2d § 766B; *Dolton v. Capitol Federal Savings & Loan Assoc.,* 642 P.2d 21 (Colo.Ct.App. 1981). Plaintiff contends that defendants interfered with its prospective business advantage with Maybelline. In support of its contention, plaintiff proffers evidence that plaintiff had a business relationship with Maybelline; that plaintiff had sold products to Maybelline; and that plaintiff had lost some of its Maybelline business because of competition by Accessories Plus. Robards Dep. pp. 69–70, 116–121. Plaintiff also presents testimony by Robards that, in his opinion, Trey Marks sabotaged products while at Kaiser Corporation (a supplier of plaintiff's) so that plaintiff would be unable to provide adequate products to Maybelline. Robards Dep. pp. 122–125.

There are numerous deficiencies in plaintiff's claim regarding Maybelline. First, plaintiff's claim against all defendants (except Trey Marks) is premised on the allegation that they participated in the formation of Accessories Plus, which sold products to Maybelline. Accessories Plus, as a competitor of plaintiff, cannot be held liable for this tort so long as: (a) the relation concerned a matter involved in the competition between Accessories Plus and plaintiff; (b) Accessories Plus did not employ wrongful means; (c) its action does not create or continue an unlawful restraint of trade; and (d) Accessories Plus's purpose was at least in part to advance its interest in competing with plaintiff. Restatement of Torts, 2d § 768(1); *Dolton v. Capitol Federal Savings & Loan Assoc.*, 642 P.2d 21 (Colo.Ct.App.1981). Accessories Plus meets all of the requirements of the competitor's privilege.

Plaintiff argues, though not directly in relation to the competitor's privilege, that Accessories plus is an illegitimate business from its inception because it was founded upon misappropriated trade secrets. Presumably, plaintiff would contend that, therefore, plaintiff employed "wrongful means" as discussed in Restatement § 768(1)(b). The comments to that subsection, however, make it clear that the "wrongful means" contemplated concern wrongful means of inducement, not wrongful means of creating a product. The examples listed in cmt. e are illustrative: "predatory means ... physical violence, fraud, civil suits and criminal prosecutions." Therefore, plaintiff's argument is unpersuasive. Accessories Plus cannot be liable for interference with prospective business advantage. It follows then that none of the other defendants are liable simply for participating in the formation and operations of Accessories Plus.

Further, to the extent plaintiff contends that any defendant aided or encouraged Trey Marks's alleged sabotage of parts while at Kaiser, plaintiff's claim again must fail. There is no evidence in the record linking Marks's sabotage to plaintiff's lost business with Maybelline. Rather, the only evidence presented relates to business lost to Accessories Plus through competition. Ro-

bards Dep. pp. 116–121. Accordingly, I will grant defendants' motion for summary judgment on all of plaintiff's claims for interference with prospective business advantage.

## 2. Conversion

As discussed, plaintiff's claim for conversion is preempted by the UTSA, except to the extent that plaintiff claims conversion of physical items such as the drawings and specifications for plaintiff's machine. Defendant argues that there is no evidence in the record to support a claim for conversion against anyone except Trey Marks. Interestingly, no claim for conversion has been made against Trey Marks. Plaintiff, apparently unwilling or unable to discern that it has not asserted a claim against Trey Marks for conversion, argues in its brief that Trey Marks converted its property. Pltf. Br. at 31–32.

Plaintiff further contends that Accessories Plus is liable for conversion because Trey Marks became an owner of Accessories Plus, and Accessories Plus has benefitted from the development of machines using the drawings and specifications. Therefore, plaintiff argues, it would be reasonable for a juror to infer that Accessories Plus came into the possession of plaintiff's property and has converted it either by possession or destruction.

As plaintiff does not argue or present evidence that anyone other than Trey Marks or Accessories Plus could be liable for conversion, I will grant summary judgment on this claim as to all defendants except Accessories Plus. There is, however, a genuine issue of material fact regarding whether Accessories Plus converted plaintiff's drawings and specifications for its machine. The record contains sufficient evidence from which a reasonable juror could infer that Accessories Plus used plaintiff's drawings and specifications to build its machines and that it must have possessed them to do so. There is significant evidence, for example, that Trey Marks, in building the machines that would become the basis for Accessories Plus, used blueprints that he converted from plaintiff. *See* Figueroa Dep. p. 7. Therefore, I will deny the motion for summary judgment as to Ac-

cessories Plus on plaintiff's claim for conversion as it relates to physical items such as blueprints or specifications of plaintiff's machine.

### 3. Civil Conspiracy

Plaintiff asserts that defendants conspired to (1) interfere with plaintiff's contractual and prospective business relations and (2) misappropriate trade secrets. The elements for a civil conspiracy claim were set forth by the Colorado Supreme Court in *Nelson v. Elway,* 908 P.2d 102, 106 (Colo.1995). "[A] plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Id.* A court may not infer the agreement necessary to form a conspiracy. *Id.; More v. Johnson,* 193 Colo. 489, 494, 568 P.2d 437, 440 (1977) ("[S]ilent knowledge of an unlawful act is insufficient to establish the requisite agreement."). The purpose of the conspiracy must either be unlawful or lawful and accomplished by unlawful means. *Contract Maintenance Co. v. Local No. 105, Building Service Employees Int'l Union,* 160 Colo. 190, 415 P.2d 855, 856 (1966). In addition, "[a] party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Nelson,* 908 P.2d at 106.

I have determined that plaintiff presents no evidence that any defendant interfered with plaintiff's contractual or prospective business relations. Similarly, plaintiff has not proffered any evidence that any defendant conspired to interfere with plaintiff's contractual or prospective business relations. Plaintiff does not contest this point in its responses, and I will grant summary judgment as to all defendants on this claim.

As to plaintiff's claim that defendants conspired to misappropriate trade secrets, plaintiff has, at least with regard to certain defendants, again failed to present sufficient evidence to raise a genuine issue of material fact precluding summary judgment. In particular, plaintiff's proffer of evidence fails to create a genuine issue of fact whether Frederick Marks II, Steve Wormser, David Wormser, or Accessories Plus had a "meet-

ing of the minds" with regard to the misappropriation of plaintiff's trade secret.

Defendants argue that it is not enough that each of them agreed to do "something" that eventually facilitated the building of applicator machines, which, for the sake of these motions, are assumed to have been built using plaintiff's trade secrets. Rather, defendants contend that plaintiffs must show that each defendant agreed to help in building the machine *knowing* that plaintiff's trade secrets would be used to do so. I agree.

Mere agreement to do something that happens to aid in the commission of a tort, without more, does not constitute civil conspiracy. Here, plaintiff cannot succeed on its claims for civil conspiracy without showing that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose.

Plaintiff has presented no evidence that Frederick Marks II participated in any agreement knowing that he would be furthering a conspiracy to misappropriate plaintiff's trade secrets. I will, therefore, grant summary judgment in favor of him on this claim.

Plaintiff has also presented no evidence of an agreement by Accessories Plus to aid in the misappropriation of plaintiff's trade secrets. Although the evidence is sufficient to create a question of fact whether Accessories Plus misappropriated plaintiff's trade secrets itself, plaintiff has pointed to no evidence of agreement between Accessories Plus and any other alleged co-conspirator that could serve as the basis for a conspiracy claim.

Plaintiff has presented sufficient evidence to survive summary judgment with regard to Wormser Corporation, Alan Wormser, and Jose Figueroa. Plaintiff has proffered enough evidence to create a genuine issue of material fact whether Alan Wormser knew that Trey Marks intended to use plaintiff's trade secrets in building an applicator machine. This is implicitly recognized by defendants in their failure to move for summary judgment regarding the misappropriation claim against Alan Wormser. Alan Wormser's knowledge may be imputed to Wormser Corporation because Alan Worm-

ser was an officer of Wormser Corporation. *See, e.g., Magnum Foods, Inc. v. Continental Casualty Co.,* 36 F.3d 1491, 1501, n. 10 (10th Cir.1994). Both Alan Wormser and Wormser Corporation agreed to help form Accessories Plus to take advantage of the applicator machine being built using plaintiff's trade secrets. Therefore, I will deny the summary judgment motion as it relates to Alan Wormser and Wormser Corporation.

I will also deny summary judgment for Jose Figueroa. Plaintiff has presented sufficient evidence of Figueroa's agreement to help build an applicator machine for Trey Marks with knowledge that the plans Trey Marks was using were taken from plaintiff. Figueroa, 3:30 P.I. Testimony, pp. 10–13, 15–16, 20.

As to Steve and David Wormser, the question is closer. Plaintiff presents evidence that Steve and David Wormser: were experienced in the cosmetics industry; had purchased cosmetic supplies for over thirty years without ever becoming involved in the manufacture of applicators; loaned tens of thousands of dollars to Trey Marks and Accessories Plus; knew that Marks had worked for plaintiff; knew that plaintiff owned a machine that produced applicators and that the design of that machine was confidential; and could not identify any reason for going into business with Trey Marks other than the fact that Marks had worked for plaintiff and "had a good head on his shoulders."

In its brief, plaintiff also asserted that Steve and David Wormser were "told all about" Trey Marks's obligation to maintain plaintiff's trade secrets. Pltf.Supp.Resp. p. 6. The cites to the record, however, indicate only that Steve Wormser recalls Trey Marks saying something vague about signing a "confidentiality report" for plaintiff, but that Trey Marks indicated that it would not be applicable to what Accessories Plus would be doing. S. Wormser Dep. pp. 103–104. Further, David Wormser indicated that Alan Wormser may have indicated something about Trey Marks's obligations to plaintiff, but Alan assured him that it would not be an issue. D. Wormser Dep. pp. 21, 30.

Plaintiff also contends in its brief that Eva Wormser stated that Marks was held out to be "a guy who worked at Powell who said he could make a machine ... and that was the crux of it." Pltf.Supp.Resp. p. 7. Again, however, the record fails to bear out plaintiff's assertion. Eva Wormser does not make that statement in the pages of the deposition cited by plaintiff. In fact, she states, in response to a question regarding Trey Marks's ability to build a machine being derived from his experience at Powell, "I think one thing had nothing to do with the other." E. Wormser Dep. p. 27.

Plaintiff further distorts the record by stating that "Stephen and David Wormser Bribed Jose Figueroa." Pltf.Supp.Resp. p. 7. There is no evidence in the record that either Steve or David Wormser either directly or through Trey Marks paid Jose Figueroa to do anything. The most that can be gleaned from the record is that the Wormsers provided Trey Marks with some money and that Trey Marks paid Jose Figueroa for some work while he was still temporarily employed with plaintiff.

There is no question that both Steve and David Wormser entered into agreements that furthered the alleged misappropriation of plaintiff's trade secrets. For example, each loaned money to Trey Marks and Accessories Plus and participated in the formation of Accessories Plus. Plaintiff must show, however, that they knowingly agreed *to further the unlawful purpose* of misappropriating plaintiff's trade secrets. If not, Steve and David Wormser cannot be held liable for performing legal acts such as making loans or organizing a corporation. *See Nelson,* 908 P.2d at 106.

Plaintiff asserts that these defendants' failure to ask any questions as to Trey Marks's qualifications before loaning him and Accessories Plus large sums of money is sufficient to create a genuine issue of fact whether they knew that Trey Marks was going to use plaintiff's trade secrets in building his machine. I disagree.

The agreement necessary to support a claim for civil conspiracy cannot be inferred. *See More,* 568 P.2d at 440. Plaintiff must present evidence of such an agreement. Plaintiff's evidence here is entirely circum-

**1482**

stantial, and I cannot infer it to be more probable than not that Steve and David Wormser agreed to aid in the accomplishment of the goal of the alleged conspiracy: the misappropriation of trade secrets. I will therefore grant summary judgment in favor of Steve. and David Wormser on plaintiff's conspiracy claim.

### 4. Misappropriation of Trade Secrets

Defendants Frederick Marks II, Steve Wormser, and David Wormser move for summary judgment on plaintiff's claims for misappropriation of its trade secrets. Plaintiff's claim for misappropriation against these defendants arises from a cause of action captioned "Unfair Competition." Defendants concede under our liberal pleading rules that this cause of action can be read to state a claim for misappropriation of its trade secrets as well as unfair competition. I agree, and I will therefore address plaintiff's claim for misappropriation of trade secrets.

Plaintiff does not contest the motion of Frederick Marks II on this claim. Nor does the record contain any showing that Frederick Marks II could be held liable for misappropriation of plaintiff's trade secrets. Accordingly, I will grant his motion for summary judgment.

Misappropriation is defined in the UTSA as:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(I) Used improper means to acquire knowledge of the trade secret; or

(II) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(A) Derived from or through a person who had utilized improper means to acquire it;

(B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(III) Before making a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Colo.Rev.Stat. § 7–74–102.

■ With regard to Steve and David Wormser, plaintiff presents essentially the same facts as discussed above with regard to plaintiff's conspiracy claim. In short, plaintiff contends that because Steve and David Wormser provided Trey Marks with a large sum of money without inquiring into his qualifications to build an applicator machine, knowing that Trey Marks had worked for plaintiff and that plaintiff owned a confidential machine to produce applicators, a reasonable juror could find that they knew that Trey Marks would use plaintiff's trade secrets in building the machine. Importantly, unlike a civil conspiracy, reasonable inferences are permitted here. As such, viewing the evidence in a light most favorable to the plaintiff, a reasonable juror could find that Steve and David Wormser knew that Trey Marks would use plaintiff's trade secrets in building the applicator machines.

Plaintiff alleges that the defendants violated several subsections of § 102. I will address two. In its original response, plaintiff contended that Steve and David Wormser were liable for misappropriation under § 102(2)(b)(II)(C). A fair reading of that section requires that the defendants (1) knew plaintiff's trade secrets, (2) used plaintiff's trade secrets, (3) knew that they were using plaintiff's trade secrets, and (4) knew or had reason to know that their knowledge of the trade secrets was derived from someone with a duty to maintain the secrecy of the information. A reasonable juror could infer from the circumstantial evidence presented by plaintiff that Steve and David Wormser knew that Trey Marks was going to use plaintiff's trade secrets in building the applicator machine.

■ Defendants argue, however, that there is no evidence that Steve or David

Wormser *personally* used plaintiff's trade secrets. They contend that it is not sufficient that Wormser Corporation or Accessories Plus or its employees may have used plaintiff's trade secrets. In general, corporate officers are not personally liable for the torts of the corporation. *See Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1182–83 (10th Cir.1989) (citing *Klockner v. Keser,* 29 Colo.App. 476, 488 P.2d 1135, 1137 (1971)). Defendants contend that Steve and David Wormser cannot be liable because, at most, they participated in setting up a corporation and hiring an employee who used plaintiff's trade secrets. I disagree.

Under *Hickerson,* a corporate officer can be liable for the torts of the corporation if he actively participated or wrongfully cooperated in their commission. *Id.*

> Specific direction or sanction of, or active participation or wrongful cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

*Hickerson,* 880 F.2d at 1183 (quoting *Lobato v. Pay Less Drug Stores, Inc.,* 261 F.2d 406, 408–09 (10th Cir.1958)). Here, a reasonable juror could find that Steve and David Wormser actively participated and/or wrongfully cooperated in the misappropriation of plaintiff's trade secrets. Although plaintiff's evidence is circumstantial, looking at the evidence in a light most favorable to plaintiff, the evidence is sufficient.

In its supplemental response, plaintiff shifts its focus to § 102(2)(a). Again, plaintiff has presented evidence creating a genuine issue of material fact as to its claim. Plaintiff has presented sufficient evidence to create a genuine issue whether Steve and David Wormser "acquired" plaintiff's trade secrets. Defendants argue that, at most, the evidence shows that Steve and David Wormser knew that *Trey Marks* acquired plaintiff's trade secrets. Even if that is true, defendants contend, Steve and David Wormser would not be liable under § 102(2)(a) because they did not acquire the trade secrets themselves. Here again, I disagree.

Defendants do not dispute that the evidence is adequate to create a genuine issue whether Wormser Corporation, Accessories Plus, or their employees acquired plaintiff's trade secrets. As discussed, plaintiff has presented enough evidence to create a genuine issue whether Steve and David Wormser actively participated or wrongfully cooperated in the acquisition of plaintiff's trade secrets through Wormser Corporation and Accessories Plus. *See Hickerson,* 880 F.2d at 1182–83. In addition, a reasonable juror could find that Steve and David Wormser would not have provided Trey Marks and Accessories Plus with such large sums of money without first *personally* acquiring plaintiff's trade secrets. Accordingly, I will deny Steve and David Wormser's motions for summary judgment on plaintiff's claims for misappropriation of trade secrets.

### B. *Motions Regarding Claims against Trey Marks*

Trey Marks moves for summary judgment on plaintiff's claim for breach of contract, interference with plaintiff's contractual relations, and interference with plaintiff's prospective business advantage. He contends that plaintiff has failed to present enough evidence to create a genuine issue of material fact with regard to these claims and that he is entitled to judgment as a matter of law.

#### 1. Breach of Contract

Plaintiff asserts a claim for breach of contract relating to an employee handbook signed by Trey Marks when he was employed by plaintiff. The handbook contains a section relating to trade secret protection; however, it states in several places that it "is not intended to constitute an employment contract...." Exh. A. of Trey Marks's Mot. for SJ. at ¶ 1.01, Article XVIII. In one instance, the handbook states: "This handbook is not a contract, express or implied. Nor is it an enforcement promise of any kind between the employer and employee." *Id.* at ¶ 1.01. Trey Marks contends that this language clearly and unambiguously demonstrates that he did not contract with plaintiff to maintain plaintiff's trade secrets. I disagree.

Each statement in the handbook cited by plaintiff is made in the context of abrogating the possibility that the handbook would be seen as an *employment* contract. As I stated in my findings and conclusions at the preliminary injunction hearing: "The employee manual is clear and unambiguous in its statement to the employee that there is no other employment contract, but an employment relationship 'at will.' Clearly, given the development of employer-employee relationships under the law of the State of Colorado, this disclaimer is a requisite predicate to avoid any implied contract under the terms of the manual.... It is ambiguous, I think, whether a contract of nondisclosure could be said to exist between the employee or the employer."

Because the language of the employee handbook is ambiguous as to whether it constitutes an enforceable contract of nondisclosure by Trey Marks, I cannot decide as a matter of law whether a contract exists. A reasonable juror could find that a contract did exist and that Trey Marks breached that contract. Accordingly, I will deny the motion for summary judgment on plaintiff's breach of contract claim against Trey Marks.

2. Interference with Contractual Relations

Plaintiff's only claim for interference with contractual relations is that Trey Marks interfered with its contract with Wormser Corporation. For the purposes of this motion, I will assume that plaintiff had a contract with Wormser Corporation. Nevertheless, plaintiff has not presented enough evidence to raise a genuine issue of material fact whether Trey Marks intentionally interfered with that contract.

As discussed, to prevail on its claim for intentional interference with contractual relations, plaintiff must show, among other things, that Trey Marks knew or should have known of the contract between plaintiff and Wormser Corporation and that he induced Wormser Corporation to breach that contract. Plaintiff has pointed to no evidence in the record showing that Trey Marks: knew or should have known the terms of the agreement between Wormser Corporation and

plaintiff; knew or should have known that Wormser Corporation could not purchase applicators from Accessories Plus without breaching its agreement with plaintiff; or did anything intentionally to induce Wormser Corporation to breach its contract with plaintiff. At most, Trey Marks, on the record before me, offered to sell applicators to Wormser Corporation, and Wormser Corporation agreed to purchase those applicators, perhaps in breach of its agreement with plaintiff. Without more, no reasonable juror could find that Trey Marks intentionally interfered with plaintiff's contractual relations with Wormser Corporation.

Further, I am under no obligation to scour the considerable reams of paper that plaintiff submitted in support of its opposition to summary judgment in search of evidence in its favor. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *accord, United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, I will grant Trey Marks's motion for summary judgment on plaintiff's claim for intentional interference with contractual relations.

3. Interference with Prospective Contractual Relations

Plaintiff's claim for interference with prospective contractual relations is premised on its allegation that Trey Marks sabotaged certain products while at Kaiser that were being provided to plaintiff. That sabotage, allegedly, caused plaintiff to provide inadequate products to Maybelline. Here again, I will grant summary judgment in favor of Trey Marks because plaintiff's proffer of evidence is insufficient.

As explained at length above, plaintiff has offered no evidence to establish a link between any sabotage by Trey Marks and plaintiff's lost business with Maybelline. Rather, the only evidence presented relates to business lost to Accessories Plus through competition. Robards Dep. pp. 116–121. In addition, all of plaintiff's evidence regarding the alleged sabotage itself is based upon Robards' speculation without F.R.E. 602 ba-

sis. Robards Dep. pp. 122–125. No reasonable juror could find, on the basis of the unsupported guesses of Robards, that Trey Marks sabotaged any products while at Kaiser. Accordingly, I will grant summary judgment in favor of Trey Marks on this claim.

Accordingly, it is ORDERED that:

1. The motions of Accessories Plus, Wormser Corporation, Alan Wormser, David Wormser, Jose Figueroa, Steve Wormser, and Frederick Marks II for summary judgment on plaintiff's claims for unfair competition are GRANTED;

2. The motions of Accessories Plus, Wormser Corporation, Alan Wormser, David Wormser, Jose Figueroa, Steve Wormser, Frederick Marks II, and Frederick Marks III for summary judgment on plaintiff's claims for interference with contractual relations are GRANTED;

3. The motions of Accessories Plus, Wormser Corporation, Alan Wormser, David Wormser, Jose Figueroa, Steve Wormser, Frederick Marks II, and Frederick Marks III for summary judgment on plaintiff's claims for interference with prospective business relations are GRANTED;

4. The motions of Wormser Corporation, Alan Wormser, David Wormser, Jose Figueroa, Steve Wormser, and Frederick Marks II for summary judgment on plaintiff's claims for conversion are GRANTED; the motion of Accessories Plus for summary judgment on plaintiff's claim for conversion is GRANTED IN PART, to the extent that Accessories Plus is not liable for conversion of intangible or intellectual property of plaintiff, and otherwise DENIED;

5. The motions of Fred Marks II, Steve Wormser, David Wormser, and Accessories Plus for summary judgment on plaintiff's claims for civil conspiracy are GRANTED; the motions of all other defendants for summary judgment on plaintiff's claims for civil conspiracy are DENIED;

6. The motion of Fred Marks II for summary judgment on plaintiff's claim for misappropriation of trade secrets is GRANTED; the motions of Steve Wormser and David Wormser for summary judgment on plain-

tiff's claim for misappropriation of trade secrets are DENIED.

7. The motion of Frederick Marks III for summary judgment on plaintiff's claim for breach of contract is DENIED.